IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Ruth Keffer,                                    :

      Plaintiff,

                                    CIVIL ACTION NO.: PWG-04-3523

v.                                              :

The Bank of America,                            :

      Defendant.

**<u>MEMORANDUM</u>**

      This is a premises liability case under Maryland law in which the parties have consented to my handling all proceedings. (Paper Nos. 27, 29, & 31). Plaintiff Ruth Keffer alleges in her one count complaint that she was injured on November 2, 2001 while walking on the property of a Bank of America Branch ("the Bank") in Frederick, Maryland. (Paper No. 1, Complaint, ¶¶ 5, 6). Specifically, the Complaint alleges that Ms. Keffer tripped and fell over metal stubs protruding from a cement island between the car lanes of the Bank's drive-through area. (*Id.*) She further alleges that the metal stubs, which anchored signs used to provide information to the bank's drive-through customers, were an unsafe condition that required the Bank either to provide a warning to pedestrians or to remove the hazard. (*Id.* at ¶¶ 5-9). The Bank denies Ms. Keffer's allegations. (Paper No. 3, Defendant's Answer).

      After completing discovery, the Bank filed the pending Motion for Summary Judgment on September 15, 2005. (Paper No. 14, Defendant's Motion and Memorandum, "Def.'s Mtn."). On October 17, 2005, Plaintiff filed a belated response. (Paper No. 15, Plaintiff's Response Memorandum,"Pl.'s Resp."). The Bank filed a Motion to Strike Plaintiff's Response because it was untimely, Paper No. 16, but also

1

filed a Reply, Paper No. 17, in the event this Court accepted and considered the Plaintiff's Response.

The motion is ripe for decision. Despite Plaintiff's belated response, I have considered it. Having reviewed the parties' papers and exhibits, I conclude that a hearing is unnecessary. Local Rule 105.6. For the reasons stated below, I find that the Plaintiff has failed to establish the required element of causation.[1] The Bank is entitled to judgment as a matter of law on the issue of causation and I therefore GRANT summary judgment in its favor.

## FACTUAL BACKGROUND

A few minutes after 9 a.m. on November 2, 2001, Plaintiff Ruth Keffer, 88, fell on the property of the Bank of America branch in Frederick, Maryland. The record indicates that there are two differing accounts of the events leading up to Ms. Keffer injuring herself that morning.

Ms. Keffer's son, Robert Keffer, testified that he drove to the Bank to withdraw money from his account. (Paper 14, Def.'s Mtn., Ex. 1, Deposition of Robert Keffer, "R. Keffer Depo." pp. 29-30). He brought his mother with him because she did not like to be left alone. (*Id*. at 30.) When he arrived at the bank, rather than parking close to the entrance, he parked his car near the drive-through banking lanes because there was a tree in that area of the parking lot, and he wanted his car to be in the shade. (*Id*. at 31). Mr. Keffer then went into the Bank, while Ms. Keffer stayed in the car. (*Id*.) He had asked his mother to wait in the car because he thought that he would only be inside the bank for a short time. (*Id*.)

When Mr. Keffer approached the bank teller, the teller told him that a woman had fallen in the parking lot, and asked Mr. Keffer if the woman was his mother. (*Id*. at 32).

---

[1] The Bank also argues that it is entitled to summary judgment on the issue of its duty to the Plaintiff. Because the failure to establish even one of the required elements of negligence results in summary judgment, I do not need to decide whether Plaintiff can establish Defendant's duty. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Mr. Keffer went out into the Bank's parking lot and saw Ms. Keffer sitting down, leaning her back against the pillar of a cement island. (R. Keffer Depo. at 37 & 44). The cement island was the divider between the two drive-through car lanes at the Bank. (*Id*.) Mr. Keffer observed that his mother had one leg bent and her lower body and legs were resting between four dark gray round metal "stubs"[2] on the cement island, with two of the stubs to the left of her legs and two of them to her right. (R. Keffer depo. at 37, 44, and Ex. 1, diagram by R. Keffer[3]). The metal stubs were used to anchor signs to provide information to drive-through customers. (Paper No. 14, Ex. 5, Affidavit of Roger Eger, Branch Manager, "Eger Affidavit").

Mr. Keffer did not see his mother fall and they did not discuss what caused her to fall that that day. (R. Keffer Depo. at 46). In fact, Mr. Keffer testified that he did not ask Ms. Keffer how she fell until over three years later. (*Id*. at 49-50). It is Mr. Keffer's testimony that in June 2005 Ms. Keffer told him that she broke her hip because she tripped on some bolts. (*Id*. at 49).

Ms. Keffer's Complaint and Interrogatories mirror Mr. Keffer's testimony. (Paper No. 1 and Paper No. 14, Def.'s Mtn., Ex. 2, Plaintiff's Answers to Interrogatories, "Pl.'s ATIs"). Plaintiff's interrogatories also add that Ms. Keffer walked toward the drive-through windows because she could not see the entrance of the bank, so she was walking toward the drive-through windows to ask for directions. (Paper No. 14, Def.'s Mtn, Ex. 2, Pl.'s ATIs, Ans. No. 6).

At her deposition, Ms. Keffer recounted the events that lead up to her fall differently than her son. (Paper No. 14, Def.'s Motion, Ex. 3, Ruth Keffer's Deposition

---

[2] Although the record contains no measurements of the "metal stubs" at issue, Defendant's Motion included black and white photocopies of seven photographs of the Bank's drive-through area, including the cement island and the "stubs" at issue. (Paper No. 14, Def.'s Motion, Ex. 6).

[3] During Mr. Keffer's deposition, Defense counsel asked Mr. Keffer to draw on black and white photocopies of the cement island to indicate which pillar Ms. Keffer was leaning up against when he came out of the bank. Mr. Keffer also drew a stick figure of Ms. Keffer on one of the photographs to depict how he remembered her body being positioned after he left the bank. (Paper No. 13, Def.'s Motion, Ex. 3, R. Keffer Depo., Ex. 1).

"Ms. Keffer Depo."). Although she did not remember much from that day, contrary to Mr. Keffer's testimony, Ms. Keffer recalls driving herself to the Bank that morning to meet her son. (*Id*. at 13). Ms. Keffer's testimony does not provide any information regarding why she was meeting her son at the bank, where she parked when she arrived, or why she got out of the car. (*See* Paper No. 14, Def.'s Motion, Ex. 3, Ms. Keffer Depo.). Ms. Keffer recalled that she was walking toward Mr. Keffer's car (rather than toward the bank as her interrogatory answers state) when she fell. (*Id*. at 13-14). She said that she "was going to the car where [Mr. Keffer] had it parked." (*Id*. at 13). She added that she "was going down a step or two from the walk in front of the stores . . . stepped down and was crossing to go to [Mr. Keffer's] car when down [she] went." (*Id*. at 13-14). When asked what caused her to fall, she stated, "Just my hip gave way. That's all I can say." She also testified that she did not slip or trip. (*Id*. at 14).

Following her fall, Ms. Keffer was taken to Frederick Memorial Hospital, where Dr. Chung conducted a cardiology consultation and produced a report. (Paper No. 14, Def.'s Motion, Ex. 4, Dr. Chung's Report of Consultation). Dr. Chung's report notes that Ms. Keffer suffers from dementia. He also noted that she did not recall how she fell. (*Id*.).

The parties agree that no one witnessed Ms. Keffer's fall. (Paper No. 14, Def.'s Motion, Ex. 2, Pl.'s AITs, Ans. No. 4).

**SUMMARY JUDGMENT STANDARD**

Even if I had decided not to consider Plaintiff's late response, the law requires a review of the record to determine whether summary judgment is appropriate. *Custer v. Pan American Life Insurance Co.*, 12 F.3d 410, 416 (4th Cir. 1993). Summary judgment is appropriate when there exists no genuine issue as to any material fact and a decision may be rendered as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby,*

4

*Inc.*, 477 U.S. 242, 247 (1986). The Bank, as the moving party, has the burden to demonstrate the absence of any genuine issue of material fact. *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). In determining whether summary judgment should be granted, the court "must assess the documentary materials submitted by the parties in the light most favorable to the nonmoving party." *Id. citing Gill v. Rollins Protective Services Co.*, 773 F.2d 592, 598 (4th Cir. 1985).

To be entitled to consideration on summary judgment, the facts set forth by the parties in affidavits or otherwise must be such as would be admissible in evidence. *See* Fed. R. Civ. P. 56(c); *see also Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment); *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof in the form of admissible evidence that could carry the burden of proof in his claim at trial.").

The existence of only a "scintilla of evidence," however, is not enough to defeat a motion for summary judgment. Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. It is "the affirmative obligation of the trial judge to prevent factually unsupported claims and

5

defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).

When evaluating evidentiary facts under Rule 56 to decide whether the motion should be granted, the Court uses the same standard used under a Rule 50 motion for Judgment as a Matter of Law: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250-251 (1986); *Celotex Corp.* 477 U.S. at 323 (1986); *Leon v. St. Joseph's Hospital*, 871 F.2d 1229, 1233 (4th Cir. 1989) "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. . . . the Judge must ask himself not whether he thinks the evidence unmistakenly favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Douglas v. PHH*, 832 F.Supp. 1002, 1008 (4th Cir. 1993) (*citing Anderson*, 477 U.S. at 252.)

The Bank contends that Ms. Keffer cannot establish two key elements of a negligence premises liability action:  (1) breach of duty and (2) causation. (Paper No. 14, Def.'s Mtn. at 1).  The Bank first argues that Ms. Keffer was a mere licensee at the time of her alleged fall, therefore it owed her no duty except to "abstain from willful or wanton misconduct or entrapment." *Id*. at 6-10.  Consequently, the Bank contends that the mere presence of the metal stubs is not "willful or wanton misconduct." *Id*. at 11-12. Additionally, the Bank asserts that the Plaintiff cannot meet her burden on the element of causation because the admissible evidence does not establish the probability that she tripped over the metal stubs. *Id*. at 12-14.

Plaintiff responds that there is sufficient evidence in the record to show the probability that Ms. Keffer was either a business invitee or licensee-by-invitation rather than a mere licensee. (Paper No. 15, Pl.'s Resp. at 5-8). Plaintiff further argues that her status as a business invitee or licensee-by-invitation – unlike her status as a mere licensee – would place an affirmative duty of care upon the Bank. (*Id*.) Plaintiff's Response does not explain the affirmative duties triggered by the evidentiary facts, but instead asserts that this dispute regarding her status allows Plaintiff's claim to survive summary judgment. (*Id*.) Secondly, Plaintiff's response to Defendant's causation argument is that *res ipsa loquitur* should be applied because Ms. Keffer's injuries could not have occurred but for the presence of the metal stubs. (*Id*. at 8-10).

Having thoroughly reviewed all the evidence in the summary judgment record and viewing all inferences in the light most favorable to the Ms. Keffer as the non-movant, for the reasons stated below, I find that the Plaintiff has failed to demonstrate the existence of a genuine issue of material fact as to whether the metal stubs proximately caused her injuries, and that no reasonable jury, considering the record before me, could conclude otherwise.

## **ANALYSIS**

Plaintiff asserts a one-count complaint of negligence against the Bank. Jurisdiction in this case is based solely upon diversity of citizenship, thus Maryland's substantive negligence law applies. *Jenkins v. Great Atlantic and Pacific Tea Company*, 128 F.Supp. 169, 171-72 (D.Md. 1955). In order to recover under a negligence theory in Maryland, Plaintiff must prove duty, breach, proximate cause, and damages. *Rhaney v. UMES*, 388 Md. 585, 596-97, 880 A.2d 357, 363-64 (2005). "Proximate cause consists

7

of two elements: 1) a cause in fact of the injury and (2) a legally cognizable cause." *Wankel v. A&B Contractors, Inc.*, 127 Md.App. 128, 159, 732 A.2d 333 (1999) (citing *May v. Giant Food*, 122 Md.App. 364, 383, 712 A.2d 166 (1998)). "Causation in fact raises the threshold question of 'whether the defendant's conduct actually produced an injury.'" *Wankel*, 127 Md.App. at 158, 732 A.2d at 349 (citing *Peterson v. Underwood*, 258 Md. 9, 16-17, 264 A.2d 851 (1970)). As explained below, no further analysis is necessary because the answer to this threshold question, as generated by the admissible evidence, is "no."

No one actually saw what caused Ms. Keffer to fall, so the evidence regarding causation rests on Ms. Keffer's testimony and photographs and descriptions of the area where she fell.

Ms. Keffer is alleged to have made three statements regarding the cause of her fall. Importantly, only two of them are admissible evidence that can be considered for the purposes of summary judgment. First, Ms. Keffer saw Dr. Chung for medical treatment on the day of her fall. (Paper No. 14, Def.'s Mtn., Ex. 4, Dr. Chung's Report at 1). His report states, "Patient does not recall how she fell." (*Id.*) Although the report is hearsay evidence if offered to prove that plaintiff could not recall how she fell, it is a medical record that would be admissible evidence under the "business record hearsay exception," Federal Rule of Evidence ("FRE") 803(6)[4]. Ms. Keffer's statement within the report is admissible evidence if offered by the Defendants as an admission by the

---

[4] Whether evidence is admissible first requires inquiry into the purpose for which it is being offered. The next inquiry is whether, based upon what the evidence is being offered to prove, it is relevant under FRE 401. The introduction of documents also may raise issues of authenticity under FREs 901-903, and whether it is an original writing under FREs 1001, *et seq*. It appears from the record that none of these potential evidentiary issues are being raised here, therefore, I am only analyzing whether the statements are hearsay or meet one of the exceptions to help explain the basis of my ruling.

8

party-opponent under FRE 801(d)(1)(A), as well as under FRE 803(4) (statement made in furtherance of medical diagnosis or treatment). Ms. Keffer made a second statement regarding the cause of her fall at her deposition. She testified that she fell because her hip gave out and she further clarified that she did not trip or slip on any object. This statement also is an admission by a party-opponent under FRE 801(d)(1)(A). Lastly, Mr. Keffer asserts that Ms. Keffer told him about a month before her deposition that she injured herself when she fell on metal bolts. Unlike the previous two statements, Mr. Keffer's statement regarding his mother's statement is inadmissible hearsay because it is an out of court statement offered for the truth of the matter asserted, namely, the cause of Ms. Keffer's fall. Because it is offered by Ms. Keffer in support of her claim, it is not admissible as an admission by a party-opponent, and no hearsay exception applies.

Thus, looking at the admissible evidence in the light most favorable to the plaintiff, Ms. Keffer did not recall how she fell on the day of the incident, but later remembered that it was her hip that gave way and caused her to fall. She added that no other object or substance caused her to slip or trip. Therefore, based upon the admissible statements no reasonable jury could conclude that the metal stubs caused her to fall.

The only additional evidence that could support the Plaintiff's causation theory is (1) the photographs of the drive-through banking area and; (2) Mr. Keffer's testimony that Ms. Keffer was lying in close proximity to the metal stubs when he first observed her after she fell.

Plaintiff asserts that the mere presence of the metal stubs is sufficient to create a genuine issue of material fact regarding causation. She further argues that the doctrine of *res ipsa loquitur* should be invoked here. For *res ipsa loquitur* to apply, the facts must be

9

such that a fall like Ms. Keffer's commonly does not happen "except in consequence of negligence, in the absence of explanation or other evidence as to what occurred to cause the injury." *Potts v. Armour*, 183 Md. 483, 486, 39 A.2d 552, 554 (1944). "The *res ipsa loquitur* rule does not apply where it can be inferred from ordinary experience that the accident might have happened without the fault of the defendant." *Id*. at 488, 39 A.2d at 555. First, ordinary experience suggests that a person of Ms. Keffer's age falling and injuring herself commonly does happen without negligence of a third-party. Secondly, there is an explanation for the cause of Ms. Keffer's fall – her own testimony that her hip gave out, which also is not an uncommon occurrence for a person Ms. Keffer's age. Accordingly, the facts of this case do not support a *res ipsa loquitur* theory of causation.

Plaintiff argues that Ms. Keffer's testimony regarding the cause of her fall should be disregarded due to her dementia. Beyond Dr. Chung's report that notes dementia as part of her medical history, Plaintiff provides no evidentiary support as to how Ms. Keffer's diagnosis affected either of her otherwise admissible statements.

Even if there were admissible evidence in the record showing that Ms. Keffer's dementia requires this court to disregard her statements, the evidence remains insufficient for a fair-minded jury to find in favor of the Plaintiff. Without her testimony, the fact finder is left to look at the photographs and speculate regarding the cause of Ms. Keffer's fall, i.e., just as it is possible that she tripped over the metal stubs, it would be just as easy to speculate that she tripped over the cement island. Absent Ms. Keffer's statements, there is no admissible evidence to prove one scenario is more likely than another.

Although research has not disclosed any Maryland case addressing a similar fact pattern as presented here, a federal district court in Virginia, applying Virginia law, has

10

had that opportunity. *See Marchant v. Boddie-Noell Enterprises, Inc.*, 344 F.Supp.2d 495 (W.D. Va. 2004). Because Virginia law regarding causation in premises liability cases is the same as Maryland law, the *Marchant* court's analysis is helpful here. *Compare id*. at 497 (applying "but for" test to determine threshold question of causation in fact under Virginia law); *with Wankel v. A&B Contractors*, 127 Md.App. 128, 158, 732 A.2d 333, 349 (1999) (applying "but for" test to determine threshold question of causation in fact under Maryland law).

In *Marchant*, the court granted summary judgment because the record provided no more than speculation as to what caused the Plaintiff's injuries, and Plaintiff's theory that a sidewalk defect caused the fall was only one of many possibilities rather than the probable cause. *Marchant*, 344 F.Supp.2d at 499. Mr. Marchant brought a negligence action against a restaurant for injuries suffered when he fell and blacked out on the Defendant restaurant's sidewalk. *Id*. at 496. The plaintiff alleged in his complaint that missing sidewalk tiles and a protruding pipe caused him to fall. *Id*. Like the instant case, there were no witnesses to the plaintiff's fall but there was testimony from the plaintiff regarding causation, as well as photographs establishing that the sidewalk defects alleged to have caused the fall were on the property somewhere near where Mr. Marchant had fallen. *Id*. at 496-498. Unlike Ms. Keffer, however, Mr. Marchant's deposition testimony revealed that he did not know what caused him to fall because he had blacked out soon thereafter. *Id*. at 498. Mr. Marchant further testified it was only after he visited the restaurant a week later that he observed the missing sidewalk tiles and protruding pipe and decided that these defects may have caused his fall. *Id*.

The only other evidence regarding causation simply raised several possibilities as to the cause. Mr. Marchant explained that his medical problems, including double vision, had previously caused him to fall and blackout unexpectedly. *Marchant*, 344 F.Supp.2d at 498. The court also noted that there was no evidence that Mr. Marchant fell at the location of the sidewalk defects, only speculation that he must have fallen at that location because his companion saw him lying somewhere near the defects after the fall. *Id*. The court agreed that the sidewalk defects possibly could have caused Mr. Marchant's fall, but also noted that it was just as possible that his medical problems, tripping over his walker, or simply him tripping or stumbling off the sidewalk also caused his fall. *Id*. Thus, the mere presence of the sidewalk defects was not sufficient to establish the probability that they were the cause of plaintiff's injuries, but rather, only added to the list of several possibilities as to the cause. *Id*. at 499. The court held that there was no evidence that would allow a jury to find without speculation that the plaintiff's fall was due to the sidewalk defect. *Id*. at 496, 499. Consequently, the court granted summary judgment. *Id*.

In this case, without Ms. Keffer's statements, (which, unlike Mr. Marchant's statements, unambiguously attribute the fall to causes unrelated to her causation theory), the remaining admissible evidence would raise no more than speculation as to the cause of Ms. Keffer's fall. With Ms. Keffer's statements, the cause of her fall was her hip giving out. Thus, considering all inferences in the light most favorable to the Plaintiff, no fair-minded reasonable jury could find that the metal stubs caused Ms. Keffer to fall, and she has failed to establish that the Bank caused her injuries. Accordingly, summary judgment in favor of the Defendant must be granted.

A separate order shall be issued granting summary judgment to the Bank.

/s/
Paul W. Grimm
United States Magistrate Judge
1/11/06

ake